James C. Murphy, Esq. (JM-9152)
EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York 10177
(212) 351-4500
Attorneys for Defendants

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

WACLAW SOBCZAK and RADOSLAW
GARDOCKI, on behalf of themselves and others
similarly situated,

Civil Action No.:
07-1226 (BMC)(RER)

Plaintiffs,

**ORAL ARGUMENT REQUESTED**

– against –

AWL INDUSTRIES INC., PAVLOVICH &
COMPANY, LLC and ROBERT PAVLOVICH

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR APPROVAL OF COLLECTIVE ACTION

EPSTEIN, BECKER & GREEN, P.C.
250 PARK AVENUE
NEW YORK, NEW YORK 10177-1211

———

212.351.4500

Attorneys for Defendant

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS .................................................................................................2

    A.      The Defendants ...............................................................................2

    B.      The Plaintiffs..................................................................................3

    C.      The Plaintiffs' Motion and Claims ................................................4

    D.      Plaintiffs' Class Allegations ..........................................................6

    E.      Prevailing Wage Projects ...............................................................6

ARGUMENT .....................................................................................................................9

    Point I      Plaintiffs' Motion Is Premised Upon A Legal Theory That Does Not Even Raise A Colorable Claim Under The FLSA ............................... 9

    Point II      Plaintiffs Cannot Demonstrate That They Are "Similarly Situated" To Other Employees And Thus Cannot Proceed With A Collective Action ......... 11

    A.      Plaintiffs Have Failed to Present Evidence That They Are "Similarly Situated" for Purposes of Section 216(b) ........................................ 12

    B.      Determining If, Whether and When Any Putative Class Members Did Not Receive Proper Overtime Pay And/Or Prevailing Wages for Work Performed Would Require an Individualized, Fact Intensive Inquiry Not Suitable for Resolution in a Collective Action. .................................................. 17

    Point III      If Notice Is Sent To Putative Class Members, Defendants' Proposed Order And Notice Are More Appropriate And Should Be Used ...................... 18

    A.      Plaintiffs' Proposed Notice And Consent Form Are Inappropriate ................. 18

    B.      Defendants' Proposed Order Should be Used .................................................. 24

CONCLUSION ..............................................................................................................25

# TABLE OF AUTHORITIES

## CASES

Armstrong v. Weichert Realtors, No. Civ. A. 05-3120, 2006 WL. 1455781 (D.N.J. May 19, 2006) ................................................................................................................................12

Barfield v. New York City Health and Hosp. Corp., No. 05 Civ. 6319, 2005 WL. 3098730 (S.D.N.Y. Nov. 18, 2005) .............................................................................................14

Barrus v. Dick's Sporting Goods, Inc., 465 F. Supp. 2d 224 (W.D.N.Y. 2006) .............................9

Brooks v. BellSouth Telecomms., Inc., 164 F.R.D. 561 (N.D.Ala. 1995), aff'd mem., 114 F.3d 1202 (11th Cir. 1997) ..................................................................................................17

Camper v. Home Quality Mgmt., Inc., 200 F.R.D. 516 (D.Md. 2000) .........................................12

Clausman v. Nortel Networks, Inc., No. IP02-0400-CMS, 2003 WL. 21314065 (S.D.Ind. May 1, 2003) .................................................................................................................18

Diaz v. Electronics Boutique of Am. Inc., No. 04-CV-0840E, 2005 WL. 2654270 (W.D.N.Y. Oct. 17, 2005) ......................................................................................................17

England v. New Century Fin. Corp., 370 F. Supp. 2d 504 (M.D.La. 2005) .................................17

Foster v. Food Emporium, No. 99 Civ. 3860, 2000 WL. 1737858 (S.D.N.Y. Apr. 26, 2000) ................................................................................................................................16, 20

Garafano Constr. Co. v. City of New York, 180 Misc. 539, 43 N.Y.S.2d 26 (S.Ct. App. Term), aff'd, 266 A.D. 960, 44 N.Y.S.2d 26 (1st Dept. 1943) ........................................20

Garcia v. Elite Lab. Serv., Ltd., No. 95 1996 WL. 33500122 ................................................22, 24

Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101 (S.D.N.Y. 2003) ...............9, 20

Grochowski v. Phoenix Constr., 318 F.3d 80 (2d Cir. 2003) ....................................................7, 10

H&R Block Ltd. v. Housden, 186 F.R.D. 399 (E.D. Tex. 1999) ..................................................15

Harrington v. Education Mgmt. Corp., No. 02 Civ. 0787, 2002 WL. 1009463 (S.D.N.Y. May 17, 2002) ................................................................................................................16, 19

Haynes v. Singer Co., 696 F.2d 884 (11th Cir. 1983) .................................................................15

Heagney v. European Am. Bank, 122 F.R.D. 125 (E.D.N.Y. 1988) ............................................16

Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137 (2002)..............................................27

Hoffmann-LaRoche, Inc. v. Sperling, 493 U.S. 165 (1989)............................................................12

Hoffmann v. Sbarro, Inc., 982 F. Supp. 249 (S.D.N.Y. 1997) ....................................................16

Horne v. United Servs. Auto. Ass'n, 279 F. Supp. 1231 (M.D.Ala. 2003)...............................15

In re Initial Public Securities Offerings Litigation, 471 F.3d 24 (2d Cir. 2006) ...........................20

Legrand v. Education Mgmt. Corp., No. 03 Civ 9798, 2004 WL. 1962076 (S.D.N.Y. Sept. 2, 2004) ......................................................................................................................................19

Levinson v. Primedia Inc., No. 02 Civ. 2222, 2003 WL. 22533428 (S.D.N.Y. Nov. 6, 2003) ....................................................................................................................................11, 12, 14

Madrid v. Minolta Business Solutions, Inc., No. 02 Civ. 2294 2002 WL. 31190172 (S.D.N.Y. Nov. 6, 2003) ....................................................................................................11, 12, 14

Mazur v. Olek Lejbzon & Co., No. 05 Civ. 2194, 2005 WL. 3240472 (S.D.N.Y. Nov. 30, 2005) ..................................................................................................................................................15

Mike v. Safeco Ins. Co., 274 F. Supp. 2d 216 (D. Conn. 2003) ........................................12, 17, 18

Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459 (2d Cir. 1998) ....................................................16

Patton v. Thomson Corp., 364 F. Supp. 2d 263 (E.D.N.Y. 2005) ................................................15

Prizmic v. Armour, Inc., No. 05-CV-2503, 2006 WL. 1662614 (E.D.N.Y. June 12, 2006)...12, 14

Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303 (S.D.N.Y. 1998) ..................................................19

Sheffield v. Orius Corp., 211 F.R.D. 411 (D. Or. 2002) ................................................................17

Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419 (1945) ......................................10

Young v. Cooper Cameron Corp., 229 F.R.D. 50 (S.D.N.Y. 2005) ..............................................16

Zavala v. Wal-Mart Stores, Inc., 393 F. Supp. 2d 295 (D.N.J. 2005) ..........................................23

## STATUTES

29 C.F.R. § 778.108 ..........................................................................................................................10

29 U.S.C. §§ 206..............................................................................................................................10

29 U.S.C. § 207.................................................................................................................10

Fed. R. Civ. P. 23............................................................................................................21

29 U.S.C. § 216(b)...................................................................................................... passim

N.Y. Lab. Law § 220 .........................................................................................................7

Defendants AWL Industries, Inc. ("AWL"), Pavlovich & Co., LLC ("Pavlovich & Co.") and Robert Pavlovich (collectively "Defendants"), by their attorneys, Epstein Becker and Green, P.C., respectfully submit this memorandum of law in opposition to Plaintiffs' Motion For Approval of Collective Action Notice.

## PRELIMINARY STATEMENT

Plaintiffs' Motion seeks this Court's approval for it to have their action conditionally certified as a collective action under Section 216(b) of the Fair Labor Standards Act ("FLSA") so that they may obtain the names and addresses of specified AWL employees and send notice of the lawsuit to those employees. This motion rests upon an inherently flawed premise. Section 216(b) is not an all purpose statute permitting persons to turn every real or contrived pay dispute into a class action. It is limited to claims for minimum wage and overtime pay violations under the FLSA, and Plaintiffs' claims do not implicate those rights. Their claims are based on the alleged failure to pay overtime at the prevailing wage rates for public sector work. This does not implicate the FLSA which requires only that overtime be paid at a person's actual rate of pay, not the rate of pay claimed by the employee. Thus, for this reason alone, Plaintiffs' motion must be denied.

Further, even if the Plaintiffs presented a colorable claim under the FLSA, they could not proceed with this case as a collective action. To proceed with a case as a collective action, the Plaintiffs must show that they are "similarly situated" to the persons that they seek to represent, i.e., that they were subject to a common policy or plan that violated the law. There is no such showing here. Plaintiffs' motion papers are devoid of any substantive allegations that establish a common policy or practice, much less evidence of the work they performed and what they should have been paid for those particular items of work. In addition, Plaintiffs' claims would involve a fact-intensive inquiry involving innumerable individualized determinations of a

person's day-to-day assignments over the course of their employment.  This is the opposite of what Section 216(b) is intended to accomplish, i.e., the provision of an efficient method of resolving a common dispute.

Moreover, as set forth in detail below, even if this matter could be pursued as a collective action, Plaintiffs' proposed notice and order are inappropriate on a variety of levels. Among other things, Plaintiffs' claims are based on the contention that they were paid at a "laborer" rate for work that should have been paid at a higher prevailing rate classification (e.g., carpenters, iron workers, sheet metal workers), yet they seek to send notice to persons in those categories as well.  (Plaintiffs do not appear to represent shop workers but to the extent that they do they would not be covered under the prevailing wage statutes that are the subject of Plaintiffs' claims.)  In addition, they seek to cover employees who worked at AWL more than three years prior to the filing of the lawsuit even though the maximum limitations period for the FLSA claims is three years.  Further, there are numerous deficiencies that, among other things, render the notice unfairly one-sided and prejudicial to Defendants and the proposed class.

Accordingly, Defendants respectfully submit that Plaintiffs' motion should be denied in its entirety.

## STATEMENT OF FACTS [1]

### A.    The Defendants

AWL is a contractor located in Brooklyn that has performed work on a variety of private sector and public sector projects in New York.  (Pavlovich Aff., ¶¶ 4-5; Sobczak Decl., at ¶4; Lasica Decl., at ¶4).  According to Plaintiffs, during the period of time in which they were

---

[1] References to "Pavlovich Aff." are to the Affidavit of Robert Pavlovich in Opposition Plaintiff's Motion for Approval of Collective Action Notice, sworn to June 29, 2007. References to "Sobczak Decl.," and to the "Lasica Dec." are to the Declaration of Waclaw Sobczak and Andrzej Lasica, respectively, in support of Plaintiffs' motion.

employed by Defendants, "Defendants' workforce consisted of at least seventy (70) employees." (Sobczak Decl., at ¶2; Lasica Decl., at ¶2).  Of these employees, Plaintiffs' estimate that 20 to 25 worked in the Defendants shop located at 460 Morgan Avenue, Brooklyn, NY 11222 as laborers. (Sobczak Decl., at ¶2; Lasica Decl., at ¶2)  Other employees of Defendants, Plaintiffs contend, worked on prevailing wage jobs in groups according to their trade and the type of job performed. (Sobczak Decl., at ¶2; Lasica Decl., at ¶2).  Plaintiffs' allege that there were "groups" consisting of carpenters, plumbers, tilers, asbestos workers, painters, iron workers, sheet metal workers, insulation workers, plasterers and laborers.  (Sobczak Decl., at ¶2; Lasica Decl., at ¶2).

Pavlovich & Co. does not, and did not, employ any of the workers on the projects or at the shop.  (Pavlovich Aff., ¶ 2).  In fact, it does not employ any persons, much less employees who have worked on public sector projects.  (Pavlovich Aff., ¶ 2).  Robert Pavlovich, who is the President of AWL, also does not, and did not, personally employ any of those employees.  (Pavlovich Aff., ¶¶ 1-2).

B.    The Plaintiffs

The two plaintiffs in this matter, Waclaw Sobczak and Radoslaw Gardocki, are former employees of the "Defendants" who allegedly worked for the "Defendants" from February 2003 to April 2005 (Sobczak) and, with a break in service, from October 2004 to April 2006. (Gardocki).  (See Complaint, ¶¶16-17).  Sobczak and Gardocki, who allege that they were not paid the appropriate prevailing wage for their work, purport to bring their claims "on behalf of themselves and others similarly situated."  (See Complaint, ¶44)  In addition, four persons have filed a "Consent to Become Party Plaintiffs" with the Court.  These persons are Andrzej Kiryk, Andrzej Lasica, Ewelina Lasica, Dariusz Chojnowski.  (See "Consents to Become Party Plaintiffs," filed on March 28, 2007 and April 6, 2007.)  All four of these persons were allegedly paid as "laborers."  (Sobczak Decl., at ¶¶5-6; Lasica Decl., at ¶¶ 5-6).

Two of these six, Andrzej Lasica and Darius Chojnowski, have actually signed releases of all claims against AWL and Pavlovich (and as to Chojnowski, Pavlovich & Co. as well) in consideration for payments they received from AWL. (Pavlovich Aff., ¶¶ 7-8). Lasica and Chojnowski both executed their release agreements after their employment terminated, and Lasica also executed a memo acknowledging that he was paid all wages and benefits due to him from AWL. (Pavlovich Aff., ¶¶ 7-8).

C.   The Plaintiffs' Motion and Claims

Plaintiffs' motion seeks to obtain the names and addresses of, and to send notice of the lawsuit to, all current or former employees who were employed by AWL and Pavlovich & Co. from March 22, 2001 to the present: (i) who worked in non-executive or administrative positions as carpenters, plumbers, tilers, asbestos workers, painters, iron workers, sheet metal workers, insulation workers, plasterers and laborers "and/or other workers with the same or similar duties"; (ii) and "did not receive proper overtime pay and/or proper prevailing wages" (iii) "for work performed on various construction projects governed by the applicable state prevailing wage statutes." (See Plaintiffs' Proposed Notice, filed on May 31, 2007).

In support of their motion, Plaintiffs have submitted declarations from Waclaw Sobczak, a named plaintiff, and Andrzej Lasica, an individual who has filed a consent form with the Court. Neither Sobczak nor Lasica assert that Defendants failed to pay them at least the minimum wage for work that they performed. Nor do they allege that Defendants failed to pay them for work they performed in excess of 40 hours in a week at an hourly rate of one-and-one-half their regular rate of pay. Indeed, they attach pay stubs from AWL to their Declarations showing that they received hourly pay ranging from $24.15 per hr. to $29.25 per hr. and that they received overtime paid one-and-one-half their regular rate of pay. (Sobczak Decl., at ¶ 3 and Ex. 1; Lasica Decl., at ¶ 3 and Ex. 1).

Rather, Sobczak and Lasica make plain that their claims are "prevailing wage" claims under New York State law, not FLSA claims.  They assert that they were not paid "the proper overtime rates for the work performed because Defendants mis-classified our employment status such that we were paid at a lower 'prevailing wage' than that to which we were entitled." (Sobczak Decl., at ¶2; Lasica Decl., at ¶2).  Sobczak and Lasica contend in this regard that they worked on projects that they believed were or may have been subject to state or federal statutes requiring employers to pay prevailing wages.  (Sobczak Decl., at ¶4; Lasica Decl., at ¶4).   Sobczak alleges that he worked at five public projects and appears to claim that AWL paid him as a "laborer" even though he worked as a carpenter, asbestos worker, iron worker and lead removal worker.  (Sobczak Decl., at ¶4).  Lasica contend that he worked on at least 15 public sector projects and appears to claim that AWL paid him as a laborer even though he performed work as a carpenter, plumber, tiler, asbestos worker, insulation worker, mason, plasterer and demolition worker.  (Lasica Dec., ¶4).

Sobczak and Lasica provide little in the way of factual detail concerning the work that they actually performed.  Sobzcak provides no details of the actual work he performed that would lead him to believe that he should have been classified as a carpenter, asbestos worker, iron worker and lead removal worker, rather than a laborer.  (Sobczak Decl., at ¶4).  The assertions in Lasica's Declaration, which are only slightly less conclusory than those provided in Sobczak's, also fail to provide any meaningful detail as to why he was allegedly improperly classified.  (Lasica Decl., at ¶4).  In addition, and surprisingly for a pay dispute, neither individual sets forth what they believed their appropriate pay should have been and for what time period they actually performed non-laborer duties.  (Sobczak Decl., at ¶4; Lasica Decl., at ¶4).

D.    Plaintiffs' Class Allegations

Sobczak and Lasica also make conclusory assertions in their Declarations that coworkers from their groups were not paid the proper prevailing wage rate and thus not "the proper overtime rates for the work performed on the public job sites because [D]efendants mis-classified [their] employment status such that we were paid at a lower 'prevailing wage' rate than to which [they] were entitled." (Sobczak Dec. ¶¶2; Lasica Dec., ¶¶2). While both Sobczak's and Lasica's Declarations provide a list of individuals with whom they allege worked on public job sites governed by the applicable state or federal prevailing wage statutes, they provide nothing in the way of concrete allegations for their assertions.  (Sobczak Decl., at ¶5 and Lasica Decl., at ¶5).  Sobzcak states that "each of them told [him] on many occasions that they like me were classified as laborers, even though [sic] they performed work as carpenters, plumbers, tilers, asbestos workers, painters, iron workers, sheet metal workers, insulation workers and plasterers." (Sobczak Decl. at ¶6).  Lasica similarly states that he "spoke with each of these individuals and each of them told [him] that they like me were not paid the proper overtime rates and proper prevailing wages for the work performed on the public job sites because…they were classified as laborers, even though performed (sic) work as carpenters, plumbers, tilers, asbestos workers, painters, iron workers, sheet metal workers, insulation workers and plasterers." (Lasica Decl., at ¶6).  Plaintiffs fail to provide any detail regarding their actual job duties.

E.    Prevailing Wage Projects[2]

Section 220 of the New York Labor Law provides generally for "prevailing wage rates" to be paid on public sector construction projects in New York.  Under New York Labor

_____

[2] Although Federal projects are mentioned from time to time in Plaintiffs' papers, they do not seek to proceed on any claims based on federal projects.  Under Federal prevailing wage law, no such claims could be maintained in this proceeding.  See Grochowski v. Phoenix Constr., 318 F.3d 80 (2d Cir. 2003).

Law § 220, the prevailing rate of wages is determined as the rate of pay in a locality paid by at least thirty percent of private sector workers in a particular trade or occupation by virtue of bona fide collective bargaining agreement. N.Y. Lab. Law § 220 (5)(a), (d) (McKinney 2002 & 2007 Supp.).   For contracts on behalf of the City of New York, the prevailing wage rates are determined by the Comptroller of the City of New York.   N.Y. Lab. Law § 220 (5)(a), (e).   For contracts with the State of New York and other public entities in the State, the Commissioner of Labor sets the prevailing wage schedule.   N.Y. Lab. Law § 220 (5)(a), (e).

Although Plaintiffs make reference to their being classified as "laborers" while they and others worked as carpenters, plumbers, tilers, asbestos workers, painters, iron workers, sheet metal workers, insulation workers, lead removal workers, demolition workers and plasterers, a review of the pertinent prevailing wage schedules shows that these conclusory allegations are virtually meaningless in the context of their claims.   By way of example, under the July 1, 2006 prevailing wage schedules for Kings County, New York State has ten different classifications for laborers alone, which are in turn further broken down by subclassifications with yet more differing pay rates.   (See Murphy Aff., Ex. A, pp. 59-67.)[3]   These include: (i) under one "Labor – Building" classification, subclassifications of "Basic Laborer" ($29.25 per hr.), "Mason Tender" ($29.25 per hr.), "Laborer (Interior Demolition)" ($28.55 per hr.) and "Laborer (Asbestos Abatement)" ($26.25 per hr.); and (ii) under another "Labor – Building" classification there is a "Plasterer Tender" classification ($28.75 per hr.).   The New York State prevailing wage schedule also has:  (i) a job category for "Asbestos Worker" ($26.45) (Murphy Aff., Ex. A, p. 46); (ii) eight job classifications for "Carpenter" with subclassifications ranging in pay from $24.59 to $51.41 per hr. (Murphy Aff., Ex. A, pp. 47-52); (iii) a classification of

---

[3] References to "Murphy Aff." are to the Affidavit of James G. Murphy, Esq., submitted in opposition to Plaintiffs' Motion for Approval of Collective Action Notice.

"Insulator – Heat and Frost" ($43.61 per hr.) (Murphy Aff., Ex. A, p. 56); (iv) a "Plasterer" classification ($34.03 per hr.), (Murphy Aff., Ex. A, pp. 81-82); (v) Four "Ironworker" job classifications plus subclassifications with wages ranging from $34.80 to $46.40 per hr., (Murphy Aff., Ex. A, pp. 57-59); (vi) five "Painter" job classifications with subclassifications ranging in pay from $21.98 to $48.50 per hr., (Murphy Aff., Ex. A, pp. 79-81); (vii) a "Plumber" job classification with wage ranges from $28.70 per hr. to $46.09 per hr. (Murphy Aff., Ex. A., p. 82); (viii) two "Sheet Metal Worker" classifications with wages ranging from $36.20 to $40.99 per hr.. (Murphy Aff., Ex. A. pp. 84-85); and (ix) eleven "Mason" classifications with wages ranging from $18.68 to $47.30 per hr. (Murphy Aff., Ex. A. pp. 67-73).

New York City's prevailing wage schedules differ somewhat from New York State's but they present the same range of issues. New York City has a job category for "Asbestos Handler (Hazardous Material)" for which the wage rate is $26.25 per hr. (Murphy Aff., Ex. B, p. 7). There are two "Carpenter" classifications with wage rates ranging from $40.25 to $40.27 per hr. (Murphy Aff., Ex. B., pp. 9-10). There is a single classification for "Laborer" with a wage rate of $34.09, but three "Mason Tender" classifications (which is a classification that falls under "Laborer" under the state schedule). (Murphy Aff., Ex. B, pp. 36, 38-39). There is a "Mason Tender" classification with a rate of $28.75 per hr. and a "Mason Tender (Interior Demolition Worker)" classification with a Tier A rate ($28.55 per hr.) and a Tier B rate ($18.25 per hr.). (Murphy Aff., Ex. B, pp. 38-39). There is a "Heat and Frost Insulator" classification with a wage rate of $42.86 per hr.. (Murphy Aff., Ex. B, p. 34). There is a "Painter" classification with four subclassifications in which the hourly wage rates range from $33.50 per hr. for "Brush and Roller" to $36.50 per hr. for other work. (Murphy Aff., Ex. B, p. 41). There are four different "Plumber" classifications with hourly rates ranging from

$28.61 per hr. for "Plumber – Mechanical Equipment and Service" to "Plumber" at $44.41 per hr. (Murphy Aff., Ex. B, pp. 48-49). There is also a "Plumber Laborer – Pipe Layer" classification with a wage rate of $34.09 per hr. (Murphy Aff. Ex. B, p. 50). There is also a "Plasterer" classification at a rate of $34.03 per hr. and a "Plasterer-Tender" classification at a rate of $28.75 per hr. (Murphy Aff. Ex. B. p. 46). There are two "Sheet Metal Worker" classifications (both have wage rates over $40.00 per hr.) and two "Iron Worker" classifications with hourly rates at $38.30 and $37.65. (Murphy Aff., ex. B, pp. 35-36, 52-53). There is also a "Tile Layer – Setter" classification at $40.92 per hr. and a "Tile Finisher" classification at $33.55 per hr. (Murphy Aff., Ex. B, pp. 57-58). None of Plaintiffs' papers state where they would fit under these schedules or any others.

## ARGUMENT

### POINT I

### PLAINTIFFS' MOTION IS PREMISED UPON A LEGAL THEORY THAT DOES NOT EVEN RAISE A COLORABLE CLAIM UNDER THE FLSA

Plaintiffs' motion for a collective action fails at the most fundamental level – it fails to present even a colorable claim that the FLSA has been violated. See, e.g., Barrus v. Dick's Sporting Goods, Inc., 465 F. Supp. 2d 224, 231 (W.D.N.Y. 2006) (for purposes of an FLSA collective action, Court must decide whether plaintiffs have met their burden of showing a "colorable basis" for their claims); Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 105 (S.D.N.Y. 2003) (in order to proceed as a collective action under the FLSA, the Plaintiff must first make a colorable claim for relief under the FLSA). As noted above, Section 216(b) is not an all purpose statute allowing employees to proceed with claims every time they have a claimed pay dispute with their employer. Section 216(b) claims are limited to claims alleging violations of Sections 206 and 207 of the FLSA, i.e., violations of the minimum wage

and overtime compensation provisions of the FLSA.  <u>See</u> 29 U.S.C. §§ 206, 207 and 216(b).
Plaintiffs' claims – which are premised upon the contention that they were misclassified as
laborers and therefore received less overtime pay than they would have received if they were
properly classified at higher pay grades – simply do not implicate the FLSA.

      The FLSA "requires employers to pay each employee a guaranteed minimum
wage and <u>it does not address liability for underpayment of hours at prevailing wage rates</u>."
<u>Grochowski</u>, 318 F.3d at 87 (citation omitted) (emphasis added).  Moreover, the FLSA provides
in relevant part that "no employer shall employ any of his employees…for a workweek longer
than forty hours unless such employee receives compensation for his employment in excess of
the hours above specified at a rate not less than one and one-half times the <u>regular rate</u> at which
he is employed."  29 U.S.C. § 207(a)(1) (emphasis added).   Although the term "regular rate" is
not specifically defined in the statute, "[t]he Supreme Court has described it as the hourly rate
<u>actually paid</u> the employee for the normal, nonovertime workweek for which he is employed."
29 C.F.R. § 778.108 (emphasis added) (<u>citing</u> <u>Walling v. Youngerman-Reynolds Hardwood Co.</u>,
325 U.S. 419 (1945)); <u>see also</u> <u>Grochowski</u>, 318 F.3d at 87 (emphasis added) (holding that
claims under the FLSA for unpaid overtime compensation are limited to one-and-one-half times
the hourly rates actually paid).   Thus, as the Second Circuit has made abundantly clear in
<u>Grochowski</u>, 318 F.3d at 87, employees cannot pursue a claim under the FLSA by claiming that
their overtime pay was less than it would have been had their employer paid the correct
prevailing wage rate.   Indeed, to contend otherwise would turn every dispute related to
compensation, based on contract, discrimination, or otherwise, into an FLSA claim.

      Here, as set forth above, Plaintiffs do not allege that the Defendants failed to pay
them at least the minimum wage for hours that they worked or that the Defendants failed to pay

them at the rate of time-and-one-half of their actual rate of pay for all hours worked in excess of 40 hours in a workweek.  Rather, Plaintiffs claim that Defendants did not pay them the proper overtime rates because they did not receive the proper prevailing wage rate for the work performed.  (See Sobczak Decl., at ¶2; Lasica Decl., at ¶2).  Thus, Plaintiffs' claims do not arise under Section 216(b) of the FLSA and their motion fails at the most basic level.

Accordingly, for this reason alone, Plaintiffs' motion must be denied.

## POINT II

### PLAINTIFFS CANNOT DEMONSTRATE THAT THEY ARE "SIMILARLY SITUATED" TO OTHER EMPLOYEES AND THUS CANNOT PROCEED WITH A COLLECTIVE ACTION

Even if Plaintiffs had presented a colorable claim under the FLSA, their motion would still fail as it does not satisfy the requirements for proceeding with a collective action. Section 216(b) of the FLSA permits employees to bring actions for violations of the FLSA's minimum wage and overtime pay provisions on behalf of themselves and, under appropriate circumstances, other similarly situated employees.  29 U.S.C. § 216(b).  Under this provision, district courts are vested with the discretionary authority to permit a matter to proceed as a collective action and authorize the issuance of a notice to potential opt-in plaintiffs.  Levinson v. Primedia Inc., No. 02 Civ. 2222, 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003); Madrid v. Minolta Bus. Solutions, Inc., No. 02 Civ. 2294, 2002 WL 31190172, at *1 (S.D.N.Y. Oct. 2, 2002) (subsequently withdrawn pursuant to settlement (Nov. 26, 2003)).

To warrant the exercise of such discretion, plaintiffs must establish that they are "similarly situated" to the potential opt-in members.  Id.; 29 U.S.C. § 216(b).  Although a plaintiff can meet this burden by "making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated

the law" (Id.; see also, Madrid, 2002 WL 31190172, at *1), "[m]ere allegations in [a] complaint are not sufficient." Camper v. Home Quality Mgmt., Inc., 200 F.R.D. 516, 519 (D.Md. 2000) (citations omitted).   Nor are allegations of a "companywide policy . . . [without] a factual showing that extends beyond [the plaintiff's] own circumstances." Levinson, 2003 WL 22533428, at *2.   Further, opt-in certifications are not appropriate when the resolution of the issues will require individualized, fact-intensive analyses.   Mike v. Safeco Ins. Co., 274 F. Supp. 2d 216, 220 (D. Conn. 2003).   As discussed below, Plaintiffs' claims fail on all these levels.

A.   Plaintiffs Have Failed to Present Evidence That
     They Are "Similarly Situated" for Purposes of Section 216(b)

Conclusory allegations in affidavits devoid of evidentiary specifics will not satisfy the burden of establishing that a notice may be permitted to be sent.   See, e.g., Prizmic v. Armour, Inc., No. 05-CV-2503, 2006 WL 1662614 (E.D.N.Y. June 12, 2006) (plaintiff's general allegations that he and other insulation installers were denied overtime compensation was insufficient to warrant certification).   As the court recently explained in Armstrong v. Weichert Realtors, No. Civ. A. 05-3120, 2006 WL 1455781, at *2 (D.N.J. May 19, 2006), in the course of denying a motion to certify a class where the plaintiff provided no support for his conclusory allegation that there was a policy against paying overtime:

> The risk of allowing conditional certification on such minimal evidence is that it can facilitate class action abuse.   In the key case on this issue, Hoffmann-LaRoche, Inc. v. Sperling, 493 U.S. 165, 171 (1989), the Supreme Court observed that "class actions serve important goals but also present opportunities for abuse." Requiring a Plaintiff to make a modest factual showing that others have suffered the same injury works to prevent class action fishing expeditions.

(Emphasis added).

Here, Plaintiffs' motion rests upon nothing other than bald assertions that they can maintain a collective action in paragraph 41 of their Complaint and their declarations, which are

conclusory at best in stating that they were paid as laborers even though they performed work as a carpenter, asbestos worker, iron worker and lead removal worker (Sobczack) and as a carpenter, plumber, tiler, asbestos worker, insulation worker, plasterer, and demolition worker (Lasica). (Sobczak Decl., at ¶ 4; Lasica Decl., at ¶ 4). Without more, these assertions are meaningless. Stating that they performed work as "plumber", "tiler", "carpenter", "iron worker" or other titles are simply nothing more than bald conclusions that fail to tell what they did or what classification they should have been paid under. All that stating that a person worked as a "laborer", a "mason", a "plumber", or other title does is put them into one of several subclasses under one of many different classifications under the state schedule, and which have widely different pay scales. Likewise, stating that one worked as a "carpenter", "plumber" or "mason" does not mean that they were paid inappropriately. There are classifications under all those categories that pay less than laborer or mason tender.

Plaintiffs' Declarations also demonstrate a fundamental misunderstanding of the prevailing wage analysis. Their assertions seem to imply that asbestos, lead removal and mold removal work pay more than "laborer" work when in fact it pays less. (See Murphy Aff., Ex. A, pp. 46, 59-67 and Ex. B, pp. 7, 36, 38-39). They also fail to recognize that demolition work is Laborer/Mason Tender work under the state and city schedules. (See Murphy Aff., Ex. A, pp. 62-63 and Ex. B, pp. 38-39). Indeed, the general lack of any reference to the term "Mason Tender" is somewhat surprising given the relationship of the mason tender/laborer classifications in the state and city schedules with regard to Plaintiffs' work. The Mason Tenders' collective bargaining agreement is listed as the basis for the wage rates for the classifications in the City schedules for Asbestos Worker-Hazardous Material (Mason Tenders District Council - Local 78), Mason Tenders (Mason Tenders District Council) and Mason Tender-Interior Demolition

(Mason Tenders District Council – Local 79).  (See Murphy Aff., Ex. B, pp. 7, 38-39).  Further, a review of the Mason Tenders District Council's agreement shows an extremely wide scope of work, including mixing concrete, working with masons and carpenters, fencing work, erecting scaffoldings, removal and abatement of asbestos, lead and other toxic material, demolition work, fireproofing work, and working with plasters.    (Pavlovich Aff., Ex. A, Art. IV, sec. 1 (f), (g), (k) (l) and (o), sec. 2, sec. 3 and sec. 4).

Moreover, Plaintiffs' contentions are even more deficient with regard to their purported evidence that other employees were not paid the proper rate.  Plaintiffs' contentions amount to nothing more than rank hearsay about conclusory assertions.  No other persons have submitted affidavits and Plaintiffs demonstrate no specific knowledge of the job duties of the other employees or what they were actually paid compared to what they claim that they should have been paid.  Rather, the Sobczak and Lasica declarations state that they know people were not paid the proper overtime rates and prevailing wages based on "discussions" they had with them about supposedly being misclassified. (Lasica Decl., at ¶6; Sobczak Decl., at ¶6).

These type of conclusory assertions are routinely found to be insufficient for purposes of authorizing notice.  See, e.g., Prizmic, 2006 WL 1662614 (plaintiff's general allegations that he and other insulation installers were denied overtime compensation was insufficient to warrant certification); Barfield v. New York City Health and Hosp. Corp., No. 05 Civ. 6319, 2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005) (plaintiff's anecdotal hearsay was insufficient to demonstrate that she and others were victims of a common policy or plan); Levinson, 2003 WL 22533428, at *2 (non-specific affidavit allegations concerning duties of other employees and compensation insufficient to warrant notice); Madrid, 2002 WL 31190172, at *2 (plaintiff's affidavits with conclusory assertion failed to demonstrate that the putative

members of the class were similarly situated).[4]  In fact, all Plaintiffs' "evidence" amounts to little more than contentions that employees complained that they should have been paid more. There is absolutely no evidence of a common plan or policy.

Moreover, Plaintiffs are not even contending that all workers are classified as laborers.  Indeed, their attempt to argue that they are similarly situated cannot be reconciled with the fact that they seek to send notices to persons in several different job titles other than their own based on the assumption that that they should have been paid what those persons were paid. It is difficult to fathom how the Plaintiffs claim that they are misclassified as laborers when they should have been paid as carpenters, plumbers, tilers, asbestos workers, painters, iron workers, sheet metal workers, insulation workers or plasterers could possibly allow them to claim that they were "similarly situated" with persons who actually were classified in these titles.

Indeed, none of the cases cited by Plaintiffs provide them with any support for these claims.  Besides actually attempting to proceed under colorable claims under the FLSA, the cases cited by Plaintiffs all involve claims predicated on clearly enunciated policies being challenged with regard to a group of employees who presented a coherent group of potential plaintiffs who were allegedly affected by the policies.  See, e.g., Patton v. Thomson Corp., 364 F. Supp. 2d 263 (E.D.N.Y. 2005) (employer conceded that it paid all Client Service Managers in the same manner pursuant to the same policies); Mazur v. Olek Lejbzon & Co., No. 05 Civ. 2194, 2005 WL 3240472 (S.D.N.Y. Nov. 30, 2005) (common policy of Defendants' failure to

---

[4]The point has also been demonstrated in other cases outside the Second Circuit. See, e.g., Haynes v. Singer Co., 696 F.2d 884, 887 (11th Cir. 1983); (counsel's assertion of widespread violations and that additional plaintiffs would come from other stores insufficient); Horne v. United Servs. Auto. Ass'n, 279 F. Supp. 2d 1231, 1236-37 (M.D.Ala. 2003) (collective action denied where plaintiff submitted only his own affidavit and stated that he believed other similarly situated individuals existed); H&R Block Ltd. v. Housden, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (conclusory affidavits stating that other employees were discriminated against insufficient).

pay overtime wages); Heagney v. European Am. Bank, 122 F.R.D. 125 (E.D.N.Y. 1988) (bank employees in the age group protected by ADEA between June 1, 1984 and December 1, 1985 and who accepted early retirement pursuant to a voluntary ERIP); Harrington v. Education Mgmt. Corp., No. 02 Civ. 0787, 2002 WL 1009463 (S.D.N.Y. May 17, 2002) (defendant's maintained a policy of not paying overtime to assistant directors by way of improperly classifying them as exempt under the FLSA); Foster v. Food Emporium, No. 99 Civ. 3860, 2000 WL 1737858 (S.D.N.Y. Apr. 26, 2000) (hourly grocery employees denied compensation for hours worked and for overtime work); Young v. Cooper Cameron Corp., 229 F.R.D. 50 (S.D.N.Y. 2005) (policy not to compensate product design specialists for hours worked in excess of 40 hours); Hoffmann v. Sbarro, Inc., 982 F. Supp. 249 (S.D.N.Y. 1997) (managers subject to reductions in their compensation as a result of uniform company-wide policy requiring them to reimburse company for cash shortages and other losses).

Finally, Plaintiffs' assertion that they are similarly situated, is particularly inappropriate given that two of the six persons asserting claims have signed releases with the company.  Further, while the releases' enforceability may be challenged under the FLSA, their claims are fundamentally based on New York law under which a release that is "clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced." See, e.g., Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 463 (2d Cir. 1998).[5]  The "Blumberg release" language signed by Lasica and Chojnowski, plainly falls within this category.  Thus, the presence of these individualized defenses presents yet another strong reason why the Plaintiffs cannot be deemed similarly situated.

---

[5] We note that courts have held that a release of FLSA claims typically requires approval from a court or the U.S. Secretary of Labor.

B.    Determining If, Whether and When Any Putative Class Members Did Not Receive Proper Overtime Pay And/Or Prevailing Wages for Work Performed Would Require an Individualized, Fact Intensive Inquiry Not Suitable for Resolution in a Collective Action.

Plaintiffs' assertions underlying their attempt to represent a § 216(b) class, is also fundamentally flawed in that their claims would present innumerable fact-intensive determinations that would overwhelm any common issues. In this regard, in determining whether to certify a class, the Court "must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits of the case." Mike, 274 F. Supp. 2d at 220. Where, as here, the determination of the merits would involve individualized assessment of individual's claims, a collective action is plainly inappropriate. See, e.g., Diaz v. Electronics Boutique of Am. Inc., No. 04-CV-0840E, 2005 WL 2654270, at *5 (W.D.N.Y. Oct. 17, 2005) (denying certification of a collective action where the "circumstances of [the] individual claims potentially vary too widely to conclude that…the Plaintiffs are similarly situated."); Brooks v. BellSouth Telecomms., Inc., 164 F.R.D. 561, 569 (N.D.Ala. 1995) (declining to certify a collective action where the court "would be faced with numerous individualized defenses"), aff'd mem., 114 F.3d 1202 (11th Cir. 1997); Sheffield v. Orius Corp., 211 F.R.D. 411, 413 (D. Or. 2002) (denying certification where "each claim would require extensive consideration of individualized issues of liability and damages" and "be mired in particularized determinations of liability and damages, rather than collective consideration of common questions of law and fact."); England v. New Century Fin. Corp., 370 F. Supp. 2d 504 (M.D.La. 2005) (declining certification where individual inquiries predominated the case due to different locations, managers and factual situations).

In the instant action, Plaintiffs maintain that the class should include current and former employees in the following 11 positions: carpenters, plumbers, tilers, asbestos workers, painters, iron workers, sheet metal workers, insulation workers, plasters and laborers and a catch-

all "and/or other workers with the same or similar duties." These classifications, moreover are spread across over at least 16 different projects with at least three different supervisors with regard to just a single plaintiff. In addition, regardless of what job titles could be included, their claims by their nature will require an individualized, fact-intensive inquiry for each plaintiff and each putative class member, as to what duties/projects each performed on a daily basis, whether any was not paid within the proper prevailing wage classification for time worked and, if so, how much each is entitled to. This requires a person-by-person, week-by-week, project-by-project analysis. In this way, this matter simply is not suitable for resolution in a collective action. Clausman v. Nortel Networks, Inc., No. IP02-0400-CMS, 2003 WL 21314065, at *4 (S.D.Ind. May 1, 2003) (opt-in certification denied where liability as to each plaintiff would require the Court to make a fact-intensive inquiry into each of their employment situations); Mike, 274 F. Supp. 2d at 220-21 (opt in certification inappropriate where the determination of liability hinges on individualized, fact intensive assessments).

Accordingly, for these additional reasons, Plaintiffs' motion should be denied.

## POINT III

### IF NOTICE IS SENT TO PUTATIVE CLASS MEMBERS, DEFENDANTS' PROPOSED ORDER AND NOTICE ARE MORE APPROPRIATE AND SHOULD BE USED

A.      Plaintiffs' Proposed Notice and Consent Form Are Inappropriate

As set forth above, Defendants respectfully submit that the sending of Notice to putative class members is not appropriate and Plaintiffs' request to do so should be denied in its entirety. However, if the Court rules that sending notice is appropriate, Plaintiffs' proposed

Notice is deficient and misleading.[6]  As drafted, not only is certain of the information provided prejudicial to Defendants, it does not inform the recipients of information that is important to their decision:

    1.    <u>The "To" Line</u>

    First, the Notice should not go to current and former employees of Defendants who were employed within six years preceding March 22, 2007, but rather distribution of the Notice should be limited to those who were employed within three years from the date of the Court's order because the limitations period runs from the date of the filing of the opt-in consents, not from the date of the commencement of this action.

    Although the complaint alleges violations of both the FLSA and the New York State Labor Law, there is no reason why the court should allow the Notice to all employees of Defendants going back six years so as to take account for the longer New York State statute of limitations.  "It is well settled that there is no collective action analogous to FLSA § 216(b) under the wage and overtime provisions of the New York State Labor Law." <u>Legrand v. Education Mgmt. Corp.</u>, No. 03 Civ. 9798, 2004 WL 1962076, at * 2 (S.D.N.Y. Sept. 2, 2004). As such, there is "no basis for this Court to authorize notice to potential class members going back six years (which is the statute of limitations under the Labor Law)." <u>Id.</u> (citation omitted). <u>See also</u>, <u>Foster</u>, 2000 WL 1737858, at *3 (declining to authorize notice to potential class members going back six years); <u>Gjurovich</u>, 282 F. Supp. 2d 101 (although plaintiffs brought suit under the FLSA and the New York State Labor Law, notice only went back three years). [7]

---

[6] Attached to the Murphy Aff. as Exhibits C through F, for the Court's reference are Defendants' proposed Notice and Order as well as a redlined copy of those documents showing the differences between the parties' proposed Notices and Orders.

[7] Plaintiffs correctly concede that both <u>Realite v. Ark Rests. Corp.</u>, 7 F. Supp. 2d 303 (S.D.N.Y. 1998) and <u>Harrington</u>, 2002 WL 1343753 (S.D.N.Y. June 19, 2002) do not

Further, Plaintiff should not be able to obtain what will be in essence a Fed. R. Civ. P. 23 order while expressly acknowledging that their motion is based exclusively under Section 216(b) of the FLSA. This is particularly inappropriate given that: (i) Section 216(b)'s opt-in procedures are fundamentally different from the opt-out procedures of Rule 23, (ii) pursuing class, as opposed to individual, claims, as acknowledged by Plaintiffs, can limit the relief available to persons under the New York Labor Law, and (iii) the Second Circuit has made clear in its recent decision in In re Initial Public Securities Offerings Litigation, 471 F.3d 24 (2d Cir. 2006) that Rule 23's requirements for class action certification are to be rigorously observed.

Second, the Notice should only be addressed to AWL employees (Pavlovich & Co. has none) and not include carpenters, plumbers, tilers, asbestos workers, painters, iron workers, sheet metal workers, insulation workers, plasterers and/or other workers with the same or similar duties. As discussed, above such persons can not be considered similarly situated to Plaintiffs. The Notice should be limited to laborers, mason tenders and asbestos-hazardous materials workers as those are the only categories that would be logical considering Plaintiffs' job duties and their theory of the case.

Further, it does not appear that the Plaintiffs are seeking to send notice to the shop workers. To the extent that they are, any such notice would be inappropriate. Those individuals could not be deemed to be similarly situated. Their work, stock keeping, in-house fabrication and cleaning equipment and then placing it in inventory is not prevailing wage work and is far different from any of the Plaintiffs' work. Work on material done off-site, even if it involves materials used at a project, is not considered prevailing wage work. See Garafano Constr. Co. v.

---

specify the reasons for allowing the notice to go back six years to account for the New York statute of limitations period.

<u>City of New York</u>, 180 Misc. 539, 540, 43 N.Y.S.2d 26 (S.Ct. App. Term), <u>aff'd</u>, 266 A.D. 960, 44 N.Y.S.2d 26 (1st Dept. 1943).

       2.      <u>The "Re" Line</u>

There is no need for a "Re" line in the Notice.  It does not add anything substantive and is repetitive.

       3.      <u>"Introduction"</u>

Plaintiffs' Notice does not advise potential plaintiffs that they are not required to join in the class action.  In addition, the last paragraph of the introduction should be deleted, as this is an FLSA collective action Notice and not a Notice to advise plaintiffs of possible New York State Labor Law claims.  Lastly, Defendants have added language reflecting that the Notice and its contents should not be understood as an expression of any opinion by any Court concerning the merits of this case. This sentence is similar to the very last one contained in Plaintiffs' Notice, however, it is more appropriately presented at the beginning of the Notice so that recipients are made aware of this fact earlier as they consider whether to join the action.

       4.      <u>"Description of the Lawsuit"</u>

Defendants made a revision to more accurately reflect Plaintiffs' claims.

       5.      <u>"Composition of the Class"</u>

As stated above, the Notice should not include carpenters, plumbers, tilers, asbestos workers, painters, iron workers, sheet metal workers, insulation workers, plasterers and/or other workers with the same or similar duties.  Rather, the Notice should be limited to laborers/mason tenders and hazardous materials workers as those classifications are the most closely related to the jobs held by Plaintiffs while employed by Defendants.  In addition, the Notice should only go back three years from the date of the Court's order because the limitations

period runs from the date of the filing of the opt-in consents, not from the date of the commencement of this action.

6. <u>"Your Right to Participate in this Action"</u>

This section has been substantially modified by Defendants. The statements contained in Plaintiffs' Notice indicate to a putative class member that they are bona-fide class members when, in fact, no ruling has been made on that issue yet. Thus: (1)Plaintiffs' presentation leads the recipients to believe that Defendants have identified them as a potential participant in the action and that there is some merit to the claims asserted. <u>See Garcia v. Elite Lab. Serv., Ltd.</u>, No. 95 C 2341, 1996 WL 33500122, at **2-3 (N.D. Ill. July 11, 1996) (notice should not assert that putative members have an unequivocal right to bring suit) and ; (2) Plaintiffs' presentation does not provide important information such as the fact that there must still eventually be a determination that Plaintiffs and anyone who  joins the action are, in fact, similarly situated.   In addition, Defendants have modified the Plaintiffs' language with respect to the filing of a separate lawsuit with an attorney of their own choosing and have added language to advise potential plaintiffs that they may proceed pro se.

7. <u>"Effect of Joining this Case"</u>

Plaintiffs' Notice failed to include the fact that Defendants may and have the right to assert counterclaims in this action, as well as the fact that they may be responsible for ongoing litigation expenses, and, depending on the fee arrangement with counsel, attorneys' fees.  The Notice also omits the fact that the individuals may be required to participate in the suit by attending depositions etc..  Defendants also have set forth modifications informing persons that they should consult with counsel prior to submitting their consents.  As written, the notice essentially seems to require persons to accept Plaintiffs' counsel fee and other arrangements sight unseen, yet Plaintiffs do not provide any information about such essential terms.  For these

same reasons the entire Consent Form is inappropriate.   The last sentence in paragraph two of Plaintiffs' Notice also makes clear that the Court has retained jurisdiction regarding the reasonableness of fee agreements and adequacy of Plaintiffs' counsel.

8.      "Effect of Not Joining this Case"

This provision can be read to imply that the recipient must join this lawsuit if they wish to maintain a claim for their alleged unpaid overtime and does not address the fact that if they chose not to join the lawsuit, they will not be subject to any potential counterclaims.

9.      "Protection Against Retaliation"

This section in Plaintiffs' Notice overplays this issue by implying that there would be a need for such protection under specific circumstances.   A more straightforward statement would be appropriate.

Defendants have also deleted the language that discusses a potential Plaintiffs' right to join the lawsuit regardless of immigration status.   Defendants believe this language goes too far and it is also an issue that has not been fully settled.   Plaintiffs do not, but could, cite to several decisions allowing persons to proceed with FLSA claims despite their undocumented status, see generally, Zavala v. Wal-Mart Stores, Inc., 393 F. Supp. 2d 295 (D.N.J. 2005).   The Supreme Court, however, has not ruled on this issue and the fact that undocumented status may not affect an FLSA wage claim, does not mean that it will be irrelevant with regard to relief other than wages or with regard to other claims.   See Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137 (2002) (undocumented worker denied relief in NLRB proceeding).   In addition, separate and apart from the ability to pursue claims, there are also other issues raised, such as to credibility if persons presented false documents.   To the extent Plaintiffs seek to address such issues, they should be the subject of specific motions, not a line inserted to a notice.

10.     "Your Legal Representation if You Join"

There is no reference to the recipient being able to proceed pro se, or retain and contact their own counsel in Plaintiffs' Notice.

11.     "Information on Last Page of Notice"

Defendants have deleted the language that the notice and contents were reviewed and approved by the Honorable Brian M. Cogan because it is unnecessary and could be misleading.

12.     Additional Information

There are a few critical pieces of information that are missing from Plaintiffs' Notice. First, as discussed above, there is no discussion of the fact that anyone who joins the action may be responsible for attorneys' fees, depending on their arrangement with counsel, and will be responsible for costs. Garcia, 1996 WL 33500122, at *4 (language regarding costs should be added "if there is any possibility that any type of costs could be incurred by plaintiffs"). Thus, this should be included.

Second, there is no reference to any of the recipients being able to obtain a copy of the Complaint and Answer in the action. This is information they might want to review in making their decision and should be included.

B.     Defendants' Proposed Order Should be Used

Plaintiffs have submitted a proposed order along with their motion papers. Defendants respectfully submit that the order is inappropriate for the reasons discussed above regarding the merits, the description of the class and the proposed Notice. In addition, there are deficiencies in the order. First, Plaintiffs provide for Defendants to produce the names and addresses of individuals within five days but allow themselves fifteen days to mail them. Defendants should be permitted then be allowed fifteen days to provide the names and addresses.

Second, to avoid any confusion over dates, there should be a clear deadline for the filing of opt-in consents set at 60 days from Plaintiffs' counsel's receipt of the list of names and addresses. This provides clear objective dates for filing and avoids disputes over mailings, receipt of forms by Plaintiffs' counsel and the like.  Finally, any translated copy of the Notice should first be provided to Defendants who shall have ten business days from the receipt of the proposed notice to submit to the court any objections to a proposed translation.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully requests that (1) Plaintiffs' motion be denied in its entirety and that Defendants be awarded its costs and attorneys' fees incurred in connection with this motion or, in the alternative, (2) if the Court grants Plaintiffs' motion, that Defendants' Notice and Order be sent to putative class members.

Dated:  June 29, 2007

EPSTEIN BECKER & GREEN, P.C.

By: _____
James G. Murphy (JM 9152)

250 Park Avenue
New York, New York  10177-0077
(212) 351-4500
Attorneys for Defendants