UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------- X

WACLAW SOBCZAK and RADOSLAW
GARDOCKI, on behalf of themselves and others
similarly situated,

                        Plaintiffs,

          -against-

AWL INDUSTRIES, INC., PAVLOVICH &
COMPANY, LLC, and ROBERT PAVLOVICH,

                     Defendants.

----------------------------------------------------------- X

**COGAN**, District Judge.

**MEMORANDUM**
**DECISION AND ORDER**

07 Civ. 1226 (BMC)(RER)

FILED
U.S. ...
BROOKLYN OFFICE

      Plaintiffs Waclaw Sobczak and Radoslaw Gardocki, on behalf of themselves and others

similarly situated, bring this action alleging that defendants through a common policy or plan

misclassified the type of work their employees performed in order to pay the employees lower

prevailing wages and thereby violated the Fair Labor Standards Act of 1938 (29 U.S.C. § 201, et

seq.) ("FLSA") and New York State law.  The case is before the Court on plaintiffs' motion for

approval of an FLSA collective action notice and defendants' motion for judgment on the

pleadings.

      This case presents an interesting issue.  Unlike the usual FSLA plaintiffs, it is undisputed

that these plaintiffs have been paid well above the minimum wage, often as much as $20 or $30

an hour.  It is also undisputed that they received overtime pay for every overtime hour that they

worked, using their wages as the basis for calculating that overtime.  Plaintiffs, however, allege

that under state prevailing wage law, they should have been paid at an even higher base rate, and

it is that rate upon which their overtime should have been calculated.  The issue is, thus, whether

the FLSA protects plaintiffs who have been paid far in excess of the minimum wage, and who

have also been paid overtime, but whose base rate was lower than the contractual rate to which they were allegedly entitled.

For the reasons set forth below, plaintiffs' motion is granted and defendants' motion is granted in part and denied in part.

## BACKGROUND

AWL Industries, Inc. ("defendants" or "AWL") provides construction services on city, state and federal public job sites within the New York City area. Plaintiffs Waclaw Sobczak and Radoslaw Gardocki were employed as "laborers" at AWL. On March 22, 2007, they commenced this action on behalf of themselves and all other similarly situated current and former AWL employees to recover unpaid wages, unpaid overtime wages, liquidated damages and reasonable attorney fees under the FLSA, the New York Minimum Wage Act ("NYMWA"), the New State Labor Law ("Labor Law") and New York State common law. Subsequent to filing this action, nine other employees opted into this action (the "opt-in plaintiffs"). Plaintiffs claim that defendants improperly classified them as laborers and, thus, they have not been fairly compensated based on prevailing wages. Because they were classified in an allegedly lower-paying position, plaintiffs contend that their overtime, based on the lower-paying position, has been under-calculated.

Defendants maintain that plaintiffs' claims on the alleged failure to pay overtime at the prevailing wage rates do not implicate the FLSA which only requires payment of overtime at an employee's actual rate of pay. Defendants have moved to dismiss the FLSA claims on that basis. Defendants also argue that plaintiffs cannot proceed with this case as a collective action since they have failed to demonstrate that they are "similarly situated" to the others they seek to represent and have not demonstrated that defendants had a common policy or plan to misclassify

2

workers. Finally, defendants maintain that should plaintiffs be allowed to proceed with the collective action, the proposed notice and order submitted are inappropriate for a variety of reasons.

Plaintiffs moved for an Order to direct defendants to disclose the names and last known addresses of current and former employees who are potential plaintiffs and putative members of the class. Plaintiffs also moved the Court to allow this case to proceed as a collective action with a court-approved notice to be mailed to potential plaintiffs to obtain their written consent to join this action. At the oral argument on the motion, defendants appeared to be challenging the viability of plaintiffs' legal theory as part of their opposition. The Court suggested that defendants formally raise that issue, and defendants have accordingly moved for judgment on the pleadings.

## DISCUSSION

### I.    The Viability of Plaintiffs' Claims under the FLSA

The FLSA requires employers to pay employees a minimum wage. It also guarantees that employees are paid overtime compensation "at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. §§ 206(a)(1), 207(a)(1). It is firmly established that even employees who are paid in excess of the minimum wage may proceed under the FLSA if they do not receive time and a half for overtime. See Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 577, 62 S.Ct. 1216 (1942). See also Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 42, 65 S.Ct. 11 (1944)) ("Even when wages exceed the minimum prescribed by Congress, the parties to the contract must respect the statutory policy of requiring the employer to pay one and one-half times the regularly hourly rate for all hours actually worked in excess of 40.").

3

The issue before the Court relates solely to overtime, and requires a determination of plaintiffs' "regular rate" as that term is used in the FLSA. Is it the hourly rate at which they have been actually paid, as defendants contend, or is it the rate that they should have received, pursuant to their prevailing wage agreements, as plaintiffs contend?

Defendants rely on extensive authority, the progeny of Supreme Court cases from the 1940s, holding that the "regular rate" is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424, 65 S.Ct. 1242 (1945). See also Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 68 S.Ct. 1186 (1948); Helmerich, 323 U.S. at 40. However, it is important to understand the context in which these cases arose. In each of them, the employer sought to manipulate, through contractual language, what type of work would be classified as "overtime."

In Youngerman-Reynolds, for example, the employment contract provided for payment at the statutory minimum wage ($.35 per hour), plus time and a half overtime ($.52 per hour), but also included a "guarantee" that the worker would receive a minimum payment based on a piecework (stacking boards) calculation. Because of the way the piecework was performed, the guarantee was always triggered, that is, a worker would always be compensated under the guarantee, not the statutory minimum plus overtime. This meant that the workers received an effective $.59 per hour for all hours worked, a rate higher than the contractual $.52 per hour "overtime" rate. Yet there was no differentiation between regular and overtime pay. Every hour was compensated at $.59, whether within or beyond a regular eight hour work day. The Supreme Court's invalidation of this arrangement – its insistence upon using the "actual rate" of $.59 per hour as a base rate upon which to calculate overtime – reflected its refusal to defer to the

4

contract's definition of regular and overtime pay, but rather to insist on using the economic reality of the parties' arrangement against which to measure FLSA compliance.

Similarly, in Helmerich, the employment contract established a split-day plan where employees received different pay rates for each half of a shift. For example, an employee working an eight hour shift received what the contract called the "base" or "regular rate" for the first four hours and an "overtime" rate for the remaining four hours. These rates were calculated to insure that the total wages for each shift or tour would remain the same as under the pre-FLSA contracts, so that the employer did not have to increase wages or decrease the hours of work for its employees. Under this scheme, the only way an employee could receive credit for more than forty hours at the "regular rate" was to work an unlikely eighty hours. The Supreme Court invalidated this agreement finding it inconsistent with the FLSA's statutory purpose.

The Supreme Court in Bay Ridge Operating Co. addressed another example where an employer sought to manipulate, through contractual language, the definition of "overtime" work. The agreement provided for a "basic working day" of eight hours and a "basic working week" of forty-four hours, with different hourly rates for different schedules. The first schedule was called "straight time rates" and the second was referred to as "overtime rates." An employee received straight time rates for certain shifts and overtime rates for other, less desirable shifts. While the contract overtime rates were approximately one and a half times the straight time rates, the contract did not provide for extra compensation for work in excess of forty hours in the week. The Supreme Court invalidated this agreement, finding that the higher rate paid as a shift differential is not an overtime premium, and therefore, the "overtime rate" should enter into the determination of the regular rate of pay. The Court held that the contract failed to pay the required statutory excess compensation to employees who worked all or part of their time during

the less desirable hours. The Supreme Court again reaffirmed that it would look to economic realities, instead of an "artificial regular rate", in determining FLSA compliance.

Thus, when the cases use the term "actual rate" as the standard required under the FLSA, they are juxtaposing it against an artificial rate dictated by the contract. That is the converse of the situation here, where the employer is not hiding behind contractual language, but allegedly disregarding it. If the cases discussed above have any bearing here, it is only to show that the FLSA can only increase, not decrease, amounts to which employees are contractually entitled.

For the same reason, defendants' reliance on the "regular rate" definition from the statutory amendments and 29 C.F.R. § 778.108 is unavailing. The definition of "regular rate" in the 1949 statutory amendments to the FLSA states: "[T]he 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee...." The Department of Labor ("DOL") adopted this definition as well. Congress added this definition after the Supreme Court cases where employers tried to evade § 7(a) through artificial contractual rates, and the definition Congress provided in the amendments codifies the Supreme Court authority above.

As can be seen, the definition does not address the situation present here. Neither Congress nor the DOL contemplated that employers would attempt to circumvent the purpose of the statute by setting the rate their employees received lower than the rate they were entitled to by contract and law. In fact, as observed through the cases above, the Supreme Court had faced

the opposite situation and sought to remedy such attempts to negate the FLSA's statutory purpose.[1]

Defendants come closer to the point in their reliance on Grochowski v. Phoenix Construction, 318 F.3d 80, 87 (2d Cir. 2003).  However, although the case has some factual similarities to the instant dispute, its distinctions are more significant.  In Grochowski, plaintiffs' employment contracts obligated the employer to pay "prevailing wages … as predetermined by the Secretary of Labor of the United States pursuant to the Davis-Bacon Act," 40 U.S.C. § 276(a), et seq. ("Davis-Bacon").  Plaintiffs asserted that the employer had not calculated their overtime based on the Davis-Bacon rate schedule, and alleged FLSA claims and state common law contract claims (breach of contract and quantum meruit) under supplemental jurisdiction.

The Second Circuit affirmed the dismissal of both claims because they required a determination of the rates payable under Davis-Bacon, and Davis-Bacon does not permit a private cause of action; rather, claims for violating Davis-Bacon can only be pursued administratively.[2]  Accordingly, with regard to the plaintiffs' FLSA claim, the Court held that utilizing the Davis-Bacon prevailing wages as the benchmark for overtime would impede the administrative resolution procedures under that statute: "The plaintiffs' attempt to use the FLSA to circumvent the procedural requirements of [Davis-Bacon] must fail." Id. at 87.  Similarly, with regard to the state law claims, the Second Circuit held that:

> [P]laintiffs' state-law claims are indirect attempts at privately enforcing the prevailing wage schedules contained in [Davis-Bacon]. To allow a third-party private contract action aimed at enforcing those wage schedules would be

---

[1] According to the Supreme Court, in enacting §7(a), Congress sought "(1) to spread employment by placing financial pressure on the employer through the overtime pay requirement; and (2) to compensate employees for the burden of a workweek in excess of the hours fixed in the Act." Helmerich, 323 U.S. at 40.

[2] It should be noted that the plaintiffs' FLSA claim for unpaid overtime proceeded, but not on the basis of using prevailing wages as the base rate.

7

inconsistent with the underlying purpose of the legislative scheme and would interfere with the implementation of that scheme to the same extent as would a cause of action directly under statute.

Id. at 86 (citation and quotation omitted).

In the instant case, defendants seize upon broad language in Grochowski to advance their argument that FLSA overtime must be calculated based on what the employee puts in his pocket: "[T]he FLSA requires employers to pay each employee a guaranteed minimum wage, and it does not address liability for underpayment of hours at prevailing wages." Id. at 87. The Second Circuit relied upon the Supreme Court's 1940s decisions, noting that "the Supreme Court has determined that it is 'the hourly rate *actually paid* the employee for the normal, non-overtime workweek for which he is employed.'" Id. (quoting Youngerman-Reynolds, 325 U.S. at 424, 65 S.Ct. at 1245).

Like the Supreme Court authority which it invoked, however, the Second Circuit's holding has to be read in context.  It was driven by the desire to avoid an end-run around the administrative process of Davis-Bacon.  That was the basis for the Court's reliance on the wages actually put in the worker's pocket, rather than the wages that Davis-Bacon would have required.

That concern is only partially present here.  Plaintiffs' predicate claims are common law claims as third-party beneficiaries of contracts for public works, both federal *and* state.  As to their FLSA claims for overtime based upon federally funded contracts, to which Davis-Bacon applies, Grochowski precludes consideration of federal prevailing wage standards in determining plaintiffs' rights under the FLSA.  However, to the extent that plaintiffs' claims arise under state funded contracts, to which state prevailing wage standards apply, Grochowski has no application.

Unlike Davis-Bacon, which precludes employees from suing employers directly for failure to pay prevailing wages on federal contracts, state prevailing wage law is just the opposite. Although New York has a similar statutory scheme for the administrative resolution of prevailing wage disputes, see N.Y. Labor Law § 220, the New York courts are not concerned about circumventing it. New York law permits parallel remedies, allowing employees to pursue either administrative claims under, or sue as third-party beneficiaries of, state prevailing wage contracts. Wright v. Herb Wright Stucco, Inc., 50 N.Y. 2d 837, 838, 430 N.Y.S.2d 52 (1980); Fata v. S.A. Healy Co., 289 N.Y. 401, 405-07, 46 N.E.2d 339 (1943). The Second Circuit noted this distinction in Grochowski, acknowledging that "the present contracts between the defendants and NYCHA were federally funded and, as such, are governed by the prevailing wage requirements set forth in [Davis-Bacon], not by § 220 of the New York Labor Law." 218 F.3d at 86. In sum, neither Grochowski nor the earlier Supreme Court decision on which it relies preclude the claim here.[3]

In the absence of any authority addressing this issue, I see no reason why plaintiffs' claim should fail under the FLSA. Applying Youngerman-Reynolds and similar cases, since an employer cannot insist on *enforcement* of contractual pay provisions to escape its FLSA obligations, the Court does not see how the employer can avoid its FLSA obligations by *breaching* its contract. It is true that plaintiffs must first prove their entitlement to prevailing wages under state law as a predicate for an FLSA recovery, but that is just a substantive element of proof; its necessity does not eliminate FLSA liability.

---

[3] Defendants cite to Brown v. Tomcat Electrical Security, Inc., No. 03 Civ. 5175, 2007 WL 2461823 (E.D.N.Y. Aug. 27, 2007), for the proposition that Grochowski applies when employees are claiming entitlement to prevailing wages under New York Labor Law. However, as defendants note, the Brown plaintiffs maintained their claims only under § 220 of the New York Labor Law because they did not have third party beneficiary status; they were too far removed from the contract at issue.

Defendants assert that if accepted, plaintiffs' theory would federalize any wage earner's breach of contract claim, i.e., if the worker is paid less than is contractually required, then he will also have been paid less overtime than that to which he is entitled, and an FLSA claim will result. There is a certain irony in using a federal statute, the FLSA, as the means to assert a state common law remedy under state prevailing wage law, parallel to the state administrative remedy, when no such right to parallel enforcement is permitted under federal prevailing wage law. However, as the Supreme Court cases discussed above illustrate, the FLSA already supplants state law contractual rights to some extent, and the employees' right to be paid arises under state law in every FLSA case. The small additional step that plaintiffs urge here is consistent with the purpose of the FLSA. Moreover, to deny plaintiffs' theory would allow an employer to circumvent the FLSA simply by breaching the base wage provisions of the contract and paying overtime on the improperly reduced base wage; under defendants' theory, the employer would have no liability because it will have paid overtime based on the artificial "regular rate."

The Court therefore finds that plaintiffs have stated a valid claim under the FLSA, subject to the understanding that as to federally funded contracts under which plaintiffs worked, federal prevailing wage law cannot form the basis of their claims. Defendants' motion for judgment on the pleadings is therefore granted in part and denied in part.

## II.   The Collective Action Standard

Section 216(b) of the FLSA provides for any employee to bring a collective action on behalf of himself or others "similarly situated" as long as any employee willing to join such an action gives his consent in writing and that "such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Courts have discretion to authorize sending such notice to potential plaintiffs in a collective action. Harrington v. Education Management Corp., No. 02

10

Civ. 0787, 2002 WL 1009463, *1 (S.D.N.Y. May 17, 2002) (citing <u>Braunstein v. Eastern Photographic Labs, Inc.</u>, 600 F.2d 335 (2d Cir. 1978); <u>Hoffmann v. Sbarro, Inc.</u>, 982 F.Supp. 249, 261 (S.D.N.Y. 1997)).

Section 216(b) provides for different requirements than are set forth pursuant to Federal Rule of Civil Procedure 23 for class actions.  For example, potential plaintiffs must file a written consent in order to opt-in to a collective action under Section 216(b).  <u>Mazur v. Olek Lejbzon & Co.</u>, No. 05 Civ. 2194, 2005 WL 3240472, *4 (S.D.N.Y. Nov. 30, 2005) ("Pursuant to this section, potential plaintiffs who wish to be bound by and benefit from the judgment must 'opt in' to a 'collective action'") (citing <u>Hoffman</u>, 982 F.Supp. at 260).  In addition, the requirements of Fed.R.Civ.P. 23 do not apply to a court's approval of a collective action.  <u>Id.</u> (noting that there is no showing of numerosity, typicality, commonality and representativeness needed for a collective action).

A district court may approve an opt-in notice for a collective action where the plaintiff bringing suit has demonstrated that the potential class members are "similarly situated."  <u>Wraga v. Marble Lite, Inc.</u>, No. 05 Civ. 5038, 2006 WL 2443554, *1 (E.D.N.Y. Aug. 22, 2006); <u>Patton v. Thomson Corp.</u>, 364 F.Supp.2d 263, 266-67 (E.D.N.Y. 2005); <u>Gjurovich v. Emmanuel's Marketplace, Inc.</u>, 282 F.Supp.2d 91, 95 (S.D.N.Y. 2003).  The FLSA has not defined the term "similarly situated," but courts have held that "plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." <u>Hoffman v. Sbarro, Inc.</u>, 982 F.Supp. at 261; <u>see also</u> <u>Harrington v. Education Management Corp.</u>, No. 02 Civ. 0787, 2002 WL 1009463, *1 (S.D.N.Y. May 17, 2002) (quoting <u>Foster v. The Food Emporium</u>, No. 99 Civ. 3860, 2000 WL 1737858, *1 (S.D.N.Y. Apr. 26, 2000)).  The burden at this initial stage is

minimal, and generally courts in this circuit "'require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan.'" Harrington, 2002 WL 1009463, at *2 (quoting Rodolico v. Unisys Corp., 199 F.R.D. 468, 480 (E.D.N.Y. 2001)).  Courts do not require a named plaintiff to show an actual FLSA violation, but rather that a "factual nexus" exists between the plaintiff's situation and the situation of other potential plaintiffs. Wraga v. Marble Lite Inc., No. 05 Civ. 5038, 2006 WL 2443554, *1 (E.D.N.Y. Aug. 22, 2006).  Courts regularly grant motions for approval of a collective action notice "based upon employee affidavits setting forth a defendant's plan or scheme to not pay overtime compensation and identifying by name similarly situated employees." Id. at *2 (granting plaintiff's motion based on affidavit and complaint alleging failure to pay overtime where plaintiff says that he is aware, based on conversations, of at least eighteen others in a similar situation).

Plaintiffs face a less stringent burden at this stage than is necessary to sustain a class action under Rule 23 in order to facilitate the purposes of the FLSA.  Providing notice at this early point helps "to preserve and effectuate the rights of potential plaintiffs whose claims might otherwise become time-barred during the discovery phase." Patton v. Thomson Corp., 364 F.Supp.2d 263, 268 (E.D.N.Y. 2005).  It also does not prejudice defendants because the determination to certify the class and to permit notice to be sent is merely preliminary.  A defendant can move at a later date to decertify the class if information learned through discovery should reveal that the class is not similarly situated.  Id.[4]

---

[4] It could be argued that in view of recent authority tightening the showing that is required for class certification under Rule 23, see Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc., No. 06 Civ. 2143, 2007 WL 2594477 (2d Cir. 2007); In re Initial Pub. Offering Sec. Litig., 471 F.3d 24, 31 (2d Cir. 2006), the bar for maintaining a collective action under the FLSA should also be raised if for no other reason than to retain the same marginal difference between the standards.  Defendants have not advanced that argument, and in light of the well-established standard in this Circuit for sending out the collective notice, I will leave that possibility for another case.

Plaintiffs have sufficiently demonstrated a "factual nexus" between the named plaintiffs and other potential class members, thereby meeting the minimal burden at this preliminary stage. Plaintiffs Waclaw Sobczak and Andrzej Lasica have filed affidavits in which they describe a policy by which defendants misclassified their workers' employment status so as to not pay them proper prevailing wages and overtime rates for work performed on public job sites. Both plaintiffs state that they had conversations with other employees regarding this misclassification and that the employees often compared their paychecks. In addition, plaintiffs Sobczak and Lasica provide the names of other employees whom they claim performed the same or similar work, but who were also not paid the appropriate prevailing wages and overtime rates. Sobczak listed eighteen employees with whom he worked, and Lasica gave the names of nineteen employees. Lasica also states that he and other employees often complained to their managers and that these managers admitted that the employees should have received higher pay but explained that "the boss was cheap and he would not pay more."

Defendants' argument that the affidavits are insufficient to satisfy the burden for a notice to be sent because they present mere conclusory allegations is inaccurate. Courts in this Circuit regularly rely on such evidence to determine the propriety of sending a collective action notice. See Patton, 364 F.Supp.2d at 267 (finding that plaintiff met the modest factual showing by making similar allegations); Gjurovich v. Emmanuel's Marketplace, Inc., 282 F.Supp.2d 91, 96 (S.D.N.Y. 2003) (same).

The cases that defendants cite to and rely upon are inapposite. Most notably, in those cases the plaintiffs did not provide any evidence whatsoever to meet even a minimal burden. See e.g., Prizmic v. Armour, Inc., No. 05 Civ. 2503, 2006 WL 1662614, *3 (E.D.N.Y. June 12, 2006) (court found that plaintiff had "not submitted *any* evidence by affidavit or otherwise to

13

demonstrate that he and other potential plaintiffs were victims of a common policy or plan that violated the law."). Plaintiffs in this action have offered far more than what the plaintiffs provided in the cases to which defendants cite.

At this stage, I reject defendants' argument that the policy and practice plaintiffs allege requires an individualized, fact intensive inquiry making it unsuitable for resolution in a collective action. As the court in Barrus v. Dick's Sporting Goods, Inc., 465 F.Supp.2d 224, 231 (W.D.N.Y. 2006), accurately stated, defendants are putting the cart before the horse. The Court is only deciding at this point that plaintiffs have met their limited burden to proceed as a collective action. In the present posture of the case, I am not deciding, nor is it my function at this point to decide, that the potential class members are, in fact, similarly situated or whether the practices or policies complained of, in fact, do exist. Id.; Mazur v. Olek Lejbzon & Co., No. 05 Civ. 2194, 2005 WL 3240472, *4-5 (S.D.N.Y. Nov. 30, 2005).

It is worth noting, however, that plaintiffs' claims may ultimately prove unsustainable as a collective action. Defendants point out that it is no simple matter to affix the appropriate work title to any worker so that the proper prevailing wage under state law can be determined. There are, for example, ten different classifications "laborers," and most other classification titles have multiple grades and compensation levels as well. It may thus be the case that even as to an individual worker, the proper classification requires the exercise of judgment (perhaps suggesting why both Davis-Bacon and N.Y. Labor Law § 220 provide for administrative determination), making collective analysis of worker classifications impractical if not impossible.

However, maintainability is not an issue at this stage. The threshold is low and plaintiffs have met it. If the case becomes unmanageable, the Court has the option of decertifying the class at a later date. Barrus, 465 F.Supp.2d at 229.

## III.   Collective Action Notice Requirements

The form of a court-authorized notice and provisions contained in it are left to the broad discretion of the trial court. Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 170, 110 S.Ct. 482 (1989) ("we decline to examine the terms of the notice .... We confirm the existence of the trial court's discretion, not the details of its exercise"); Gjurovich, 282 F.Supp.2d at 97. Although this Court has determined that plaintiffs have met the preliminary burden and may be certified at this stage as a collective action and that a collective action notice may be sent out to potential plaintiffs, the Court finds that certain aspects of the proposed notice and consent form are inappropriate. Initially, I hold that notice should only go to current and former employees of defendants who were employed within three years preceding March 22, 2007. In addition, the notice should only be sent to those current and former employees of defendants with similar occupational titles to the named and opt-in plaintiffs.

First, defendants are correct in asserting that the Court should only allow the notice to go back three years, rather than the six years that plaintiffs request. Although courts have taken opposing positions on this issue, this Court finds the reasoning to limit notice to three years compelling. As the court in LeGrand v. Education Management Corp., No. 03 Civ. 9798, 2004 WL 1962076, *3 n.2 (S.D.N.Y. Sept. 2, 2004), held:

> The longest applicable limitations period to plaintiffs' FLSA claim is three years if willful violations are established. 29 U.S.C. § 255(a). Thus, any potential plaintiff whose claim is more than three years old has a state law claim only ... In the absence of diversity and a claim for damages in excess of $75,000 (which seems unlikely), the Court would have no subject matter jurisdiction over claims

> that are more than three years old since such claims would be pure state law claims. There is no reason to provide an opt-in notice to a plaintiff whose claims could not be asserted in this Court.

Other courts have applied this same reasoning and rejected attempts to authorize notice to potential class members going back six years. See Foster v. The Food Emporium, No. 99 Civ. 3860, 2000 WL 1737858, *3 (S.D.N.Y. Apr. 26, 2000) (applying similar rationale and also finding that since there is no collective action analogous to FLSA § 216(b) under New York State Labor Law and New York Civil Practice Law and Rules § 901(b) prohibits class-wide relief that includes statutorily prescribed liquidated or punitive damages unless explicitly authorized for class actions, there is no basis to authorize a longer notice period).

Second, the proposed notice should only go to current and former employees of defendants who share similar occupational titles as the current plaintiffs to this action. Defendants are correct in asserting that the notice should not be addressed to other workers, such as carpenters, whom the Court believes would not be similarly situated. Furthermore, plaintiffs shall not send notice to any individuals whose work for defendants would not be considered prevailing wage work. Sending notice to those individuals would be unsupported by the proof of similarity put forth in plaintiffs' affidavits.

As to other provisions in the notice form, the Court has considered defendants' objections and approves plaintiffs' proposed Notice of Lawsuit with Opportunity to Join, subject to modifications.[5]

## IV.   Discovery of the Names and Addresses of Potential Plaintiffs

Plaintiffs seek discovery of the names and addresses of the current and former employees of defendants who are potential plaintiffs in the collective action, for the purpose of sending the

---

[5] The form of notice is attached hereto as an Appendix.

proposed notice and consent form to them.  Courts have found that this information is appropriate in such actions.  See Hoffmann La-Roche Inc. v. Sperling, 493 U.S. 165, 170, 110 S.Ct. 482 (1989); Gjurovich v. Emmanuel's Marketplace, Inc., 282 F.Supp.2d 91, 100 (S.D.N.Y. 2003).  Therefore, the names and addresses of potential plaintiffs shall be disclosed to plaintiffs' attorney within 15 days from the date this Order is entered.

Plaintiff shall make the changes noted to the Notice and Order.  In addition, a translated copy of the Notice must first be provided to defendants, who will have 10 business days from its receipt to submit any objections to that translation.

## CONCLUSION

Plaintiffs' motion for a collective action and collective action notice is granted, and defendants' motion for judgment is granted in part and denied in part, both as described above. Because this Decision and Order may involve controlling questions of law as to which there may be substantial grounds for difference of opinion, and an immediate appeal from the Order may materially advance the ultimate termination of the litigation, the Court will consider an application for certification under 28 U.S.C. § 1292(b) if defendants are inclined to make it. Any such application shall be made within 10 days from the date this Decision and Order is entered on the docket.

**SO ORDERED.**

/s/(BMC)

U.S.D.J.

Dated: Brooklyn, New York
      October 22, 2007

# APPENDIX

# APPENDIX

```
----------------------------------------------------------  X
WACLAW SOBCZAK and RADOSLAW                                 :
GARDOCKI, on behalf of themselves and others               :
similarly situated,                                        :
                                                           :
                            Plaintiffs,                    :     07 Civ. 1226 (BMC)
                                                           :
            -against-                                      :
                                                           :
AWL INDUSTRIES, INC., PAVLOVICH &                          :
COMPANY, LLC, and ROBERT PAVLOVICH,                        :
                                                           :
                            Defendants.                    :
----------------------------------------------------------  X
```

## NOTICE OF LAWSUIT WITH OPPORTUNITY TO JOIN

FROM: [This section can stay the same.]

TO: Current and former employees of AWL INDUSTRIES, INC., who were employed within three (3) years preceding March 22, 2007 (or who are currently employed there) in non-executive and non-administrative positions as laborers/mason tenders or asbestos-hazardous materials workers who worked on construction projects governed by the applicable state prevailing wage statutes and who contend that they were not paid the appropriate prevailing wage for overtime work performed on those projects.

Re: [This section can stay the same.]

**INTRODUCTION**:

The purpose of this Notice is to inform you of the existence of a collective action lawsuit in which you potentially are "similarly situated" to the named Plaintiffs, to advise you of how

your rights may be affected by this suit, and to instruct you on the procedure for participating in this suit if you decide that you want to participate in it.

You receive this Notice pursuant to the Federal Fair Labor Standards Act, which limits claims for damages to the two (2) years immediately preceding the filing of the consent. Relief for three (3) years preceding the filing is available only where the violation by the employer is proven to be willful in nature. However, the pendency of this suit will not stop the running of the statute of limitations as to any claims you might have until you opt-in to it.

**DESCRIPTION OF THE LAWSUIT**:

The lawsuit at issue was filed on March 22, 2007, by Plaintiffs WACLAW SOBCZAK and RADOSLAW GARDOCKI against AWL INDUSTRIES, INC., PAVLOVICH & COMPANY, LLC and ROBERT PAVLOVICH, in the United States District Court for the Eastern District of New York under the Docket Number: 07 Civ. 1226.

Plaintiffs allege, among other allegations, that Defendants violated the Federal Fair Labor Standards Act by not paying eligible employees proper prevailing wages for the overtime work performed on various construction projects governed by the applicable state prevailing wage statutes. The lawsuit is seeking back pay and liquidated damages from Defendants, as well as costs and attorneys' fees to compensate such eligible employees. Defendants deny Plaintiffs' allegations, and deny that they are liable to Plaintiffs for any of the back pay, damages, costs or attorneys' fees sought.

**COMPOSITION OF THE CLASS**:

The named Plaintiffs seek to sue on behalf of themselves and also on behalf of other employees with whom they are similarly situated. Specifically, Plaintiffs seek to sue on behalf

of all employees who have worked at AWL INDUSTRIES, INC., at any time within the three years preceding March 22, 2007 (or who are currently employed there), and who (i) worked in non-administrative and non-executive positions as laborers, mason tenders or asbestos-hazardous materials workers; (ii) worked or currently work on construction projects governed by the applicable state prevailing wage statutes; and (iii) contend that they were not paid the appropriate prevailing wages for overtime work performed on those projects.

**YOUR RIGHT TO PARTICIPATE IN THIS SUIT**:

If you fit the definition above, you may join this case (that is, you may "opt-in") by completing and mailing the attached "Consent to Become a Party Plaintiff" form to the Plaintiffs' counsel at the following address:

[Plaintiffs' Attorney's address stays the same.]

The form must be sent to Plaintiffs' counsel in sufficient time to have Plaintiffs' counsel file it with the federal court on or before [insert date that is 60 days from date of notice mailing]. If you fail to return the Consent to Become a Party Plaintiff form to Plaintiffs' counsel in time for it to be filed with the federal court on or before the above deadline, you may not be able to participate in this lawsuit.

It is entirely your own decision whether or not to join this lawsuit. This notice does not mean that you have a valid claim or that you are entitled to any monetary recovery. Any such determination must be still made by the Court.

**EFFECT OF JOINING THIS CASE**:

If you choose to join in this case, you will be bound by the Judgment, whether it is favorable or unfavorable. You may also be held liable for costs associated with this lawsuit, and for potential counterclaims which could be asserted against you by Defendants.

The attorneys representing Plaintiffs are being paid on a contingency-fee basis, which means that if there is no recovery there will be no attorneys' fee. If there is a recovery, the attorneys for Plaintiffs will receive a part of any settlement obtained or money judgment entered in favor of all members of the class. If you sign and return the Consent to Become a Party Plaintiff form attached to this Notice, you are agreeing to designate Plaintiffs as your agents to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' attorneys concerning attorney's fees and costs, and all other matters pertaining to this lawsuit. These decisions made and entered into by the representative Plaintiffs will be binding on you if you join this lawsuit. However, the Court retains jurisdiction to determine the reasonableness of any contingency agreement entered into by Plaintiffs with their attorneys, and to determine the adequacy of Plaintiffs' counsel.

Furthermore, you can join this lawsuit by an attorney of your own choice, who will represent only you and will be compensated on the terms as agreed between you and your attorney. You may also proceed *pro se*, that is on your own and without an attorney. If you choose to do either, you or your attorney must file an "opt-in" consent form by [insert date that is 60 days from date of notice mailing].

**EFFECT OF NOT JOINING THIS CASE:**

If you do not file a consent form and join in this case, you will not be bound by a judgment of the Court in the Fair Labor Standards Act portion of this case, whether it is favorable or unfavorable. You will not receive any monetary or other relief if Plaintiffs prevail

and you will not be subject to any counterclaims Defendants may assert, nor any costs and attorneys' fees if Defendants prevail.

The Fair Labor Standards Act limits claims for damages to the two (2) years immediately preceding the filing of the action.  Relief for three (3) years preceding the filing is available only where the violation is proven to be willful in nature.  However, the pendency of this suit will not stop the running of the statute of limitations as to any claims you might have until you opt-in to it.

**NO RETALIATION PERMITTED**:

Federal law prohibits Defendants from discharging or in any other manner discriminating against you because you "opt-in" to this case, or have in any other way exercised your rights under the Fair Labor Standards Act.

**YOUR LEGAL REPRESENTATION IF YOU JOIN**:

If you choose to join this suit, and agree to be represented by the named Plaintiffs through their attorney, your counsel in this action will be:

[Insert Plaintiffs' Counsel's name, mailing address and phone number.]

**COUNSEL FOR DEFENDANTS**:

The attorneys for Defendants AWL INDUSTRIES INC., PAVLOVICH & COMPANY, LLC and ROBERT PAVLOVICH are:

[Insert Defendants' Counsel's name, mailing address and phone number.]

**PLEADINGS IN THIS MATTER**:

Plaintiffs' Complaint and Defendants' Amended Answer filed in this lawsuit are available for inspection at the office of the Clerk of the Court.  In addition, you may obtain a copy by contacting either Plaintiffs' or Defendants' counsel who will forward a copy to you.

**THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE FEDERAL DISTRICT COURT, HONORABLE BRIAN M. COGAN, UNITED STATES DISTRICT JUDGE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK.  THE COURT HAS TAKEN NO POSITION IN THIS CASE REGARDING THE MERITS OF PLAINTIFFS' CLAIMS OR OF THE DEFENDANTS' DEFENSES.**

**PLEASE DO NOT CONTACT THE COURT, THE COURT'S CLERK, OR THE JUDGE. THEY ARE NOT PERMITTED TO ADDRESS YOUR INQUIRIES OR QUESTIONS.**